We will move to our final case today, Aluminum Trailer Company v. Westchester Fire. All right, we have both counsel here. Mr. Mathis. Thank you, Your Honor. May it please the court, I'm Mark Mathis for the Aluminum Trailer Company, sometimes called ATC. The ATC complaint, there was a complaint filed and a search that Westchester Insurance has a duty to defend ATC in an underlying litigation matter filed by BizBox and the complaint alleges that, the ATC complaint alleges that the BizBox complaint can reasonably be read as alleging facts constituting an advertising injury, thus providing a defense. The district court's order dismissing the ATC complaint seeking that defense is flawed and should be set aside. The district court erred on two issues. First, it incorrectly concluded that the features of the BizBox trailer were primarily functional and as a result, then the court concluded that the BizBox complaint could not be read as alleging a trade dress claim. Second, the district court concluded incorrectly that the BizBox complaint does not allege an infringement in ATC's advertising. First, regarding how the district court concluded that the BizBox complaint, it concluded that the BizBox complaint was only alleging functional features or almost exclusively functional features and not non-functional features. And in part, that was based initially on the district court's unnecessary, I guess, narrow interpretation of paragraph seven of the BizBox complaint, which when read with a reasonable interpretation can be read a couple of times to be alleging both functional and non-functional features. For example, that paragraph states that the designing comprises a unique combination of features that render its- Counsel, before we get too deeply into the merits of trade dress infringement, I need to clarify. It struck me as unusual that the parties and the district court spent such a great deal of time and spilled an awful lot of ink on the merits of a non-existent trade dress infringement claim. There just isn't any such claim in the underlying litigation, which is a sort of fundamental impediment to coverage here. And it's really limited to a breach of contract injury, breach of the implied covenant of good faith, which is a contract theory and a claim of tortious interference with contract based on the supposed theft of the BizBox design by your client on this one occasion. So there isn't a trade dress infringement in the case, a claim in the case, which is a fundamental problem here. And even looking past the theories that are advanced in the underlying case and the form of liability that BizBox seeks to impose on your client and recover for, there just isn't an advertising injury here as those terms are defined in the policy. So we really don't have to analyze functionality versus non-functionality, et cetera. We look solely to whether this is a claim for an advertising injury, and that's got a specific definition in the policy. Right, and as far as the lack of the actual verbiage, the words trade dress, violation of trade dress are not alleged in the BizBox complaint, and you're correct about that. The point was made at the district court level, citing some cases I don't have in front of me, but that the specific theory or specific words are not required to be in the complaint if the factual allegations are there that would be sufficient if proven true to support the claim, then the claim could exist. Mr. Mathis, the law of duty to defend is difficult enough sometimes in applying it to claims actually asserted. I share Chief Judge Sykes' concern about the fact that this is all a debate about a claim that's not actually asserted. I don't know what would happen if BizBox decides to amend, to add an express claim under the Lanham Act, but can I raise a related, it's a threshold question here. Judge Lichte gave you all the benefit of the doubt in terms of the time covered by the policy here. Is there any indication in the BizBox complaint or in what has turned up since in that litigation that any of the conduct alleged by BizBox occurred during the effective period of the Westchester policy here? My understanding, and again, because we didn't get into the weeds on that a lot, but just in talking with counsel and things with that regard, I think it was more than the benefit of the doubt because what it was was there was, they said in the complaint that it is, here's an example of one where it's happened and our belief is that it has happened otherwise as well. Presumably your client knows what products it has produced and sold and when, correct? Correct, although again, from my client's perspective, the claim is without merit and so. That's not the point. Your client knows what product is being accused of being a breach of the contract, right? Correct. Did he make any such sales during the period covered by Westchester? He did make sales during the period covered by Westchester, yes, because the BizBox relationship existed during that time. To someone other than BizBox, that is the kinds of sales of the product to customers other than BizBox that BizBox says breached your contract. Were there such sales? I don't want to misrepresent that I know that question for certain, but I believe that's true. We have not been asked that. It's sort of critical to whether coverage is gonna be available here and whether these debates about trade dress and the hypothetical claim are completely moot, right? Well, again, only in the sense that my client would assert that all of the allegations are without merit, so I accept that, but BizBox says if you're selling a product that looks like ours to anybody else, you're breaching our contract with us, right? That's their claim. I know you disagree with that. So during the period covered by the Westchester policy here, did ATC sell any such trailers to customers other than BizBox? And again, as I said a minute ago, I don't know the certainty as I stand here today. Yeah, that is going to be, if we were to agree with you on anything else and send this back, that would be first question to be resolved, right? Yes. And you have no idea what the answer is? Well, simply because, I guess, from Judge Lichty's perspective, he agreed with the... The BizBox complaint is ambiguous. I'll grant you that. I'm not disagreeing with Judge Lichty's resolution of the case as it was presented to him, but if we were to remand, Westchester should immediately ask you to identify all such sales, right? Correct. And you have no idea now, standing before us, what the answer would be? Again, I didn't quite say that. We had discussions about it, but again, since we've been dealing with the motion to dismiss, where that issue, I'm not even sure if that issue was raised at the trial court. Or maybe it was, we made the argument. And we did have some discussions at that time. But as I'm standing here today, since it was not something that Judge Lichty found against us on, that I, my memory is that there were a couple. But I don't want to stand up here and say with certainty that that is true. Because I don't know. Thank you. The, it is true that, again, the trade dress claim, those words aren't used, but the allegations do raise the possibility of a trade dress claim. And with it. That doesn't really matter. Insurance defense litigation, and in particular, duty to defend claims and coverage disputes depend on the nature of the claim that's actually pleaded in the underlying lawsuit. Four corners of the complaint. Yes, it's. What's there, if what's there, the claims that are in that suit are not, do not fall within the coverages granted in the insurance policy, then there is no duty to defend. Or do not potentially fall within the coverages. The, again, if, our theory at trial court, or district court, was that the facts are there, although labeled differently. Well, it's not just a matter of labels. It's what theories of liability are being advanced in the litigation, and what injuries are being claimed in the underlying litigation. And there's no advertising injury that's being claimed. It's a breach of contract injury, and potentially a business tort. And, again, I think as you read the four corners, that's probably true. Again, the ATC complaint did reference even the demand letter, suggesting that they have a advertising injury sort of a claim, because of it being a trade dress claim. The, you said that in your brief, but the advertising letter, or the cease and desist letter, didn't say anything about trade dress that I saw. Did I miss it? In the last paragraph, or the second to the last paragraph. Ah, sorry, you're right. They did mention trade dress. All right, your time has expired. Thank you. Thank you, Your Honor. Mr. Wadley. Mr. Wadley. May I please the court? My name is Chris Wadley, and I represent Westchester Fire Insurance Company. I believe, Your Honor, to pick up on something that Judge Sykes, you mentioned, is that I think the reason why we went into all the issues of whether factually this could give rise to a trade dress claim, et cetera, et cetera, is because there is case law out there stating that it's not the labels that count, it's that if the claim could be somehow construed as alleging something, that would be a trade dress infringement in advertisement. So, I think- That's all really troublesome, sloppy language. And let's stick with what duty to defend claims are actually about, and that's what's alleged in the underlying lawsuit, in terms of the injury, and the claims at issue there, and do they fit within the coverages? I agree. So, I believe analytically, we went through and said, okay, could we possibly tease out an allegation of trade dress infringement from these facts? And, of course, that's a long- That's not how duty to defend works. I agree, but that was the argument that was made. And so, we tease that out, and that's why there's a lot of ink spilled on that, because there's a large body of case law on whether something's functional or non-functional. At the end of the day here, though- That's more fun to talk about than insurance coverage. Sure. At the end of the day here, though, what you need is an allegation of trade dress infringement in an advertisement. So, even if we give the benefit of all doubts here, and say, okay, we can stretch this underlying complaint to its limit, even though there's not any allegation of trade dress infringement, but let's take the allegation that the white, seamless appearance of the BizBox trailer constitutes trade dress. The advertisement has to be the trade dress infringement, not the design of the product. Exactly. Those are two different things. Right, so that's why- And you carry different coverage for trade dress infringement. That's exactly right, so- And you pay more for it. That's right. So, you could, that's why you could credit everything they say about, okay, the curved fender at his trade dress, the seamless, all this is trade dress. You could even credit that the logo is an advertisement, even though we disagree with that. It's placed on the product. It's not an advertisement in the sense that we understand an advertisement. But at the end of the day, there's no trade dress infringement in the advertisement. Even if you assume the fender at the white, seamless design is trade dress, even if you assume the logo is an advertisement, they don't marry together. The claim doesn't mesh together into what would be covered under the policy. Maybe if the logo contained a picture of the knockoff, then maybe we're in the ballpark. Or if they put a BizBox logo on it. I mean, this is actually the opposite of a trade dress claim. This is a claim where they didn't try to fool anybody as to the source of this trailer. They put their name on it. So to say that there is trade dress infringement in the logo, it's sort of turning the entire law of trade dress infringement on its head to say that you infringe our trade dress by putting your own logo on the trailer. It just doesn't make any sense. It doesn't give Rice any claim that would even potentially grant coverage here. Well, it tees up the second tier question of publication to the broader audience. A logo on a single trailer is not published to the mass consumer market. Right. So I think there's essentially three components of this is that you have to have trade dress infringement, you have to have an advertisement, and you have to have trade dress infringement in the advertisement. We think it fails on all three. And that's why we spend a lot of time talking about what trade dress is. We spend a lot of time on what an advertisement is. But at the end of the day, even if you assume, yes, there's a trade dress infringement claim in here somewhere, even though there's not, and yes, there's an advertisement in there by virtue of the logo, even though we disagree with that, they don't match together. The trade dress infringement isn't in the advertisement, which is what the plain language of the policy requires. So Mr. Wadley, if we agree with you, and next week, BizBox amends its complaint to add the trade dress infringement claim that they mentioned in their cease and desist letter that I overlooked, what happens? Well, that's not going to happen because the underlying case is terminated. It's been resolved. But let's just play that hypothetical out. Please. If they made a trade dress infringement claim, you would still need the element of the infringement being in an advertisement. So even if they said you infringed our trade dress because you manufactured a knockoff trailer, it still wouldn't satisfy the insuring agreement because you don't have the advertisement element that would be required for coverage under the law. So you'd still deny? We would still deny. And then as you pointed out, we would, you know, on remand, you're right. The first question to be raised is, okay, the only alleged sale here is, predates our policy period, or postdates, I forget which one, but you know, the point is is that you would need to have the wrongful conduct during our policy period. And to answer your question, you know, the underlying case now having been resolved, I believe if you actually look at the case history there and the summary judgments and this and the other thing, I don't recall there being any allegation of any other sales during our policy period. But again, hypothetical question, we don't need to get there because we don't have trade dress infringement and we don't have an advertisement and we certainly don't have trade dress infringement in an advertisement. So if the court wants to skip over the analysis of whether this is trade dress and skip over the analysis of whether this is advertisement, it could be a one paragraph decision. It's not trade dress infringement in an advertisement. And so there's no duty to defend. CGLs don't usually insure against breaches of contract, do they? They don't, you know, and candidly, there's some inconsistencies in the case law. There is, you know, you have to have personal advertising and offense of personal advertising injury that's in the insuring agreement. And then there's invariably an exclusion for liabilities arising out of contractually assumed liabilities. And there's a debate in the case laws to whether that refers to, that encompasses all breach of contract claims, or does that only if I contractually assume someone else's tort liability or something like that. Vicarious liability. Yeah, so I think Indiana case law, I think there's a case out there, I don't have it off the top of my head, but I think the Indiana case falls on the ladder. So it's a more narrow interpretation. So I don't think the fact that it's breach of contract necessarily knocks it out under Indiana law. But again, it doesn't matter because you have to get, you have to trigger the insuring agreement before you start talking about exclusions. And here, we don't trigger the insuring agreement because we don't have personal and advertising injury. So unless the panel has any additional questions, I think that's the end of my presentation. All right, thank you very much. And Mr. Mathis, your time had expired. So that concludes our calendar for today. Our thanks to both counsel on this sixth case. We'll take it under advisement and the court will be in recess.